UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN CERTIFIED EQUIPMENT, INC.; d/b/a VALVEWORKS USA, | § § § | |
| Plaintiff, | § | |
| vs. | § § | CIVIL ACTION NO. 4:13-CV-853 |
| HOUSTON PLATING & COATINGS, LLC; d/b/a HPC PLATING COMPANY, | § § § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is Defendant Houston Plating and Coatings, LLC's ("HPC") Motion for Summary Judgment (Doc. 12). Plaintiff American Certified Equipment, Inc. ("Valveworks") filed a response styled as a "motion to continue expert deadlines" (Doc. 13). HPC filed a reply (Doc. 16). Having considered the motion, the response, the facts in the record, and the applicable legal authority, the Court concludes that HPC's motion is denied.


I.      **Background**

Valveworks manufactures and distributes metal valve and wellhead components used in the oil and gas industry. Compl., Doc. 1 ¶ 5. Due to their use in corrosive environments, these components often require protective plating or coating. *Id.* ¶ 7. These coatings must be carefully applied to exacting standards in order to maintain the integrity of the components and to ensure their functionality and safety for use in the operation of oil and gas wells. *Id.* Small variations in component size may render a component unfit for its intended use. *Id.* ¶ 5. HPC provides

1 / 11

corrosion-protection services to manufacturers in various industries including the oilfield service industry. *Id. ¶* 9.

In mid-2011, HPC solicited Valveworks's business and Valveworks began shipping components to HPC for plating and coating services. *Id.* ¶ 11–12. Each shipment was sent from Valvework's manufacturing facility in Bossier City, Lousisana to HPC's facility in Houston, Texas. *Id. ¶* 13. Prior to shipment to HPC, the components were, in a rust-free condition, wrapped in plastic or other packing material and packed in wooden crates. Decl. of J. Mason, Doc. 13-1 ¶ 4. In many cases, shipment took only one day. *Id.* ¶ 6. According to Valveworks, HPC failed immediately to meet the processing-time estimates it had promised. Doc 1 ¶ 15. Valveworks complained to HPC and HPC blamed the delays on a "backlog" created by the increasing volume of shipments from Valveworks and other manufacturers. *Id.* ¶ 16. HPC represented that it would open a new facility in summer 2012 which would greatly increase its capacity and reduce turnaround times. *Id.* Based on these representations, Valveworks continued using HPC's services and even increased the volume of shipments in February 2012. *Id.* ¶ 17.

The processing delays did not improve, and in July 2012, Valveworks began noticing physical damage, including rusting, corrosion, and pitting, to components that were returned from HPC.[1] *Id. ¶* 19. Valveworks salvaged some of the components by reworking them, but some were unsalvageable. *Id.* ¶ 20–21. On September 10, 2012, Valveworks employees visited HPC's facility to discuss the damaged components and the processing delays. *Id.* ¶ 24. During the visit, they observed Valveworks's components stored in an uncovered, outdoor storage area where they were exposed to "rain, atmospheric moisture, [and] other elements." *Id.* ¶ 25. Some of the components were stored submerged in standing water. *Id.* ¶ 25; Doc. 13-1 ¶ 8. After the

---

[1] HPC does not dispute that the component parts were damaged sometime between the time of manufacture and the time Valveworks filed suit. Doc. 12 at 2.

site visit, Valveworks ceased placing orders with HPC and demanded compensation for the damaged inventory. Doc. 1 ¶ 27. HPC refused and Valveworks filed suit. *Id.*

Valveworks alleges that inadequate storage conditions caused rusting of its components and asserts claims for breach of contract, negligence, and breach of implied warranty of good and workmanlike performance of modification services. *Id.* ¶¶ 28–43. HPC moves for summary judgment on all claims. Doc. 12 at 2. HPC argues that Valveworks's claims fail because Valveworks cannot prove causation for its negligence and breach of contract claims nor the relevant industry standards for its breach of implied warranty claim since it failed to designate an expert witness. Doc. 12 at 6. HPC argues that expert testimony is required to establish these elements and that the omission of such testimony is fatal to Valveworks's claims.

## II.  Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party bears the initial burden of identifying evidence that shows that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248–49. That evidence need not be in a form that would be admissible at trial. *Celotex*, 477 U.S. at 324.

## III.   Discussion

### A. *Necessity of Expert Testimony to Prove Causation in Claims for Negligence and Breach of Contract*

HPC argues that Valveworks cannot prove either of its claims for breach of contract or negligence because expert testimony is required to prove the causation element of each claim. Valveworks filed a response in opposition to HPC's motion arguing that expert testimony is not required to prove causation in this case.

The elements of negligence in Texas are: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). In Texas, proximate cause "consists of two elements: (1) cause in fact and (2) foreseeability." *Russell Equestrian Ctr., Inc. v. Miller*, 406 S.W.3d 243, 249 (Tex. App.—San Antonio 2013, no pet.). Cause in fact is a "but for" analysis, meaning the "negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997); *accord LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006). Causation is "a question of fact for the jury, and the jury has broad latitude to infer proximate

cause from the evidence and circumstances surrounding an event." *Gutierrez*, 106 F.3d at 687. "A jury may decide the required causal nexus between the event sued upon and the plaintiff's injuries when (1) general experience and common sense will enable a lay person fairly to determine the causal nexus, (2) expert testimony establishes a traceable chain of causation from injuries back to the event, or (3) expert testimony shows a probable-cause nexus." *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston 2002, pet. denied).

Under Texas law, the elements of breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained as a result of the breach. *Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 235–36 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A plaintiff must establish that a pecuniary loss was suffered as a result of the breach of the contract. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App—El Paso 2000, no pet.). "[E]vidence must show that the damages are the natural, probable, and foreseeable consequence of the defendant's conduct." *Id.* "[A]bsence of this causal connection between the alleged breach and the alleged damages will preclude recovery." *Id.* The "question of causation (foreseeability) which controls liability should be determined from the facts and circumstances of each particular case, and except where reasonable minds cannot differ, the issue is one for the jury." *X Techs., Inc. v. Marvin Test Sys.*, 719 F.3d 406, 412 (5th Cir. 2013).

Although the causation elements in the two claims are not identical, HPC does not distinguish them in making its argument. As such, the Court will analyze HPC's argument as to both claims in conjunction and without distinction.

Federal courts look to state law for "the kind of evidence that must be produced to support a verdict." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (internal quotation marks and citation omitted).

> Under Texas law, lay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition. Generally, lay testimony establishing a sequence of events which provides a strong, logically traceable connection between the event and the condition is sufficient proof of causation. Therefore, in determining whether lay testimony is sufficient to prove causation, Texas courts look at the nature of the lay testimony and the nature of the injury.

*Id.* (internal quotation marks and citation omitted).

Conversely, expert testimony is required when a "lay person's general experience and common sense will not enable that person to determine causation." *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). In evaluating whether a subject is beyond a lay person's general experience, "Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004).

Not all fact issues require expert testimony, even if a scientific explanation of the mechanisms at work would require an expert. In *Seitel Data, Ltd. v. Simmons*, 362 S.W.3d 782 (Tex. App.—Texarkana 2012, no pet.), the defendant argued on appeal of a jury verdict in favor of the plaintiff that an expert was required to explain to the jury that seismic blasting "could cause sand to be released from previously locked strata to infiltrate [a] well bore" and block water flow to a well. *Id.* at 793. The court disagreed, explaining that "[j]urors are not blank slates, and can be expected to bring both intelligence, knowledge, and the power to reason logically to the table." *Id.* "Common sense could allow a jury to conclude that when explosives strong enough to bounce waves off various geologic strata are used to shake the ground, the

shaking could open previously tight formations to allow sand to filter though the gravel pack and enter the wellbore." *Id.* Though the court acknowledged that some aspects of seismic testing might require expert testimony to explain, the "issue as framed in this case requires no such particularized expertise." *Id.* at 794. The court elaborated further, explaining by analogy that a "person can reasonably understand that an airplane that has lost its wings will fall to earth because its wings are missing—even without understanding the nature of the Bernoulli effect that keeps it airborne with its wings attached." *Id.*

The cases HPC cites in support of its position present issues that are far more complex than the issues in this case. In *Qualls*, for example, the court ruled expert testimony was required to show that a leaking sewer pipe under a house could cause mold throughout the entire house. *Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 558 (N.D. Tex. 2005). A test on the pipe showed it only leaked under pressure and not during normal operation, but the plaintiffs nonetheless argued that leakage from the pipe during normal use was the sole cause of all of the mold in their house, even the mold that was far removed from the sewer pipe. *Id.* The court ruled that the "specific cause issue here [was] not within the general experience and common sense of a lay person." *Id.* However, the court in *Qualls* acknowledged that "the general causal relationship between water and mold" itself was one of common knowledge. *Id.* The court took care to clarify that expert testimony is not always required to show the cause of mold and "some circumstances may be clear enough to fall within the common experience of jurors." *Id.* at 559.

The other cases HPC cites address the admissibility and credibility of expert witnesses generally and do not explicitly address whether expert testimony was essential to proving causation in the circumstances of those cases. *See Watson v. Snap-On Tools, Inc.*, Civil Action No. 04-1313-A, 2006 WL 2114558 (W.D. La., July 26, 2006) (expert witness qualified to testify

on metallurgy and failure analysis but not manufacturing process); *In re Shell Oil Refinery*, Civ. A. Nos. 88–1935, 88–2719, 1992 WL 350735 (E.D. La., Nov. 10, 1992) (motion to strike expert testimony deferred in case where expert testimony was derived from test units that defendant was not given the opportunity to examine prior to their destruction); *Texaco Trading & Transp., Inc. v. T.L. James, Inc.*, No. Civ. A. 98-1473, 98-2682, 98-2683, 2003 WL 21135717 (E.D. La., May 15, 2003) (expert testimony that a barge caused damage to a pipe that later ruptured was insufficient to overcome competing expert testimony that the barge could not have caused the damage).

Attached to Valveworks's response is the declaration of Jason Mason, Valveworks's general manger of operations (Doc. 13-1). In his declaration, Mason describes Valveworks's manufacturing protocol. Doc. 13-1. He explains that before the components were shipped to HPC they were inspected, wrapped in plastic or other packing material, and packed in wooden crates. *Id.* ¶ 4. The crates were then shipped to HPC's facility in Houston, a trip that often took less than one day. *Id.* ¶ 6. At HPC's facility, Mason saw Valveworks's shipping crates partially submerged in water and otherwise unprotected from the elements. *Id.* ¶ 8.

These facts are sufficient to enable a reasonable juror, in the absence of expert testimony, to find that HPC improperly stored Valveworks's metal components in conditions that caused them to rust. If, as the court stated in *Qualls*, it is within the common knowledge of laypersons to understand the causal relationship between water and mold, it is certainly within the common knowledge of laypersons to understand the causal relationship between water and rust. Jurors may draw on their own general experiences with moisture, steel, and rust to understand the causal issue presented.  The issue as framed in this case does not involve any specialized equipment or techniques that would be unfamiliar to the ordinary person. It involves only the

storage conditions of metal components. A scientific explanation is not required to understand that storing metal components outdoors where they are exposed to moisture could cause them to rust.

In its reply, HPC suggests alternate causes for the damage, such as exposure to moisture during shipment from overseas, or a chemical reaction caused by the glue or adhesive in the packing material. Doc. 16 at 2–3. It does not, however, introduce any evidence to support these facts. Given the nature of the injury, the lay testimony offered by Valveworks's general manager of operations is sufficient to establish a causal link. Expert testimony is not needed to establish causation on the issues presented in this case. Therefore, HPC's motion for summary judgment on Valveworks's negligence and breach of contract claims is denied.

### B. Necessity of Expert Testimony to Establish Standard of Care in Claim for Breach of Implied Warranty of Good and Workmanlike Performance

HPC argues that it is entitled to summary judgment on Valveworks's claim for breach of implied warranty of good and workmanlike performance because "the techniques used and the standard of care for handling metals in the coating and plating industry is not within the knowledge of the average juror because the average juror does not appreciate the standard protocol for protecting and maintaining the metals." Doc. 12 at 10.

Texas law recognizes an implied warranty of good and workmanlike performance in repair or modification services of existing tangible goods or property for consumers suing under the Texas Deceptive Trade Practices Act. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). This implied warranty "extends, by its very terms, to a broad range of services." *Archibald v. Act III Arabians*, 755 S.W.2d 84, 85 (Tex. 1988). It is not the results of the work which are guaranteed, rather, it is a guarantee that the performance of services shall be rendered in a good and workmanlike manner. *Melody Home*, 741 S.W.2d at 355. "Good and

workmanlike" is that "quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Id.* at 354. Expert testimony is not required to establish a breach of implied warranty provided the breach is plainly within the common knowledge of laymen. *Id.* at 355.

In the seminal case in Texas which adopted the implied warranty to repair and modify goods, the workmen repairing a pre-fabricated home failed to reconnect a washing machine drain, which resulted in flooding and damage. *Id.* at 351. The court held expert testimony was not required to establish the applicable standard of care since the jurors "had sufficient knowledge to find that the failure to connect a washing machine would not be considered good and workmanlike by those capable of judging repair work." *Id.* at 355.

In support of its argument that jurors would not understand the techniques and standard of care used in the plating and coating industry, HPC relies on a case involving the removal of a nitrogen blanket that was applied to oilfield piping to inhibit corrosion. *Fairways Offshore Exploration, Inc. v. Patterson Servs.*, No. 01-11-00079, 2013 WL 371601, at *6 (Tex. App.— Houston [1st Dist.] Jan. 31, 2013, pet. denied).[2] In that case, the defendant needed to demonstrate that removing a nitrogen blanket from around pipes breached the plaintiff's standard of care. *Id.* The court held that expert testimony was required to establish that "proper operation of a sour gas well . . . [s]pecifically, whether or not the use of a nitrogen blanket in a well . . . was necessary to protect the well piping and equipment, would be unfamiliar to the ordinary person." *Id.* Though expert testimony established that measures were needed to protect the piping and that a nitrogen blanket was a possible means of doing so, no testimony established that a nitrogen

---

[2] Opinion withdrawn and superseded by *Fairways Offshore Exploration, Inc. v. Patterson Servs.*, No. 01-11-00079, 2013 WL 3148264 (Tex. App.—Houston [1st Dist.] May 23, 2013, pet. denied).

blanket was the standard means of protecting oilfield piping such that its removal would breach the plaintiff's standard of care. *Id.*

The standard of care at issue here is more analogous to that considered in *Melody Homes* than that in *Fairways*. The facts and issues presented in *Fairways* are easily distinguishable from those presented here. Whereas the standard of care for operating a sour gas well is clearly beyond the common knowledge of the average layperson, the standard of care for storing metal components is plainly within the common knowledge of laypersons. Undoubtedly, there are aspects of metal-handling protocols at particular processing stages that may be beyond the common knowledge of a layperson, but the central issue in this case only concerns the storage conditions of metal components—not the techniques used in the plating and coating industry.[3] HPC has not introduced any evidence to show that any of the plating and coating techniques are at issue or that the pre-processing storage of metals in the plating and coating industry is beyond the common understanding of laypersons. Expert testimony is not needed to establish the applicable standard of care in this case. Summary judgment on Valveworks's claim for breach of implied warranty of good and workmanlike modification services is denied.

## III.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Defendant Houston Plating & Coatings, LLC's Motion for Summary Judgment (Doc. 12) is **DENIED**.

SIGNED at Houston, Texas, this 14th day of July, 2014.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[3] HPC acknowledges that the great majority of components at issue were never processed. Doc. 12 at 4 n.2.